**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Koreasa Maria Williams, | No. CV-23-00437-TUC-JGZ |
| Petitioner, | No. CR-21-03136-001-TUC-JGZ |
| v. | **ORDER** |
| United States of America, | |
| Respondent. | |

Petitioner Koreasa Maria Williams, who is confined at the Federal Prison Camp in Phoenix, Arizona, has filed a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (CV Docs. 1, 3, and 4; CR-21 Doc. 60.)[1] Petitioner asserts claims of ineffective assistance of counsel, alleging deficient performance during plea negotiations, at sentencing, and in the calculation of her sentence. The motion is fully briefed. (CV Docs. 1, 20, 25.)

Petitioner has also filed several additional motions, including two motions for an evidentiary hearing (CV Docs. 26, 29), a Motion to Appoint Counsel (CV Doc. 30), a Motion for Summary Judgment pursuant to § 2255 (CV Doc. 31), a Motion to Issue Certificate of Appealability (CV Doc. 32), and two motions requesting status updates (CV

---

[1] Petitioner pleaded guilty and was sentenced in two separate criminal cases: CR 19-1276 (*Williams I*) and CR 21-3136 (*Williams III*). Petitioner's challenges arise from the 2021 case but also involve matters that occurred during the 2019 proceedings. For clarity, citations to "CR-21 Doc." refer to docket entries in *Williams III*, "CR-19 Doc." refer to docket entries in *Williams I*, and "CV Doc." refer to docket entries in this parallel civil action, CV 23-437.

Docs. 27, 33). Petitioner further filed a request to proceed before a magistrate judge under 28 U.S.C. § 636(c). (CV Doc. 28.)

Because the record conclusively shows that Petitioner is not entitled to relief, the Court will deny the § 2255 Motions without an evidentiary hearing, deny the Motion to Appoint Counsel, deny Petitioner's remaining motions as moot, and decline to issue a certificate of appealability.

## I.   BACKGROUND[2]

Petitioner, a former insurance agent, engaged in multiple schemes to defraud elderly clients, abusing her position of trust to misappropriate more than $2.6 million over several years. After learning she was under investigation—and later while indicted and on pretrial release—Petitioner continued to commit new frauds, using funds from a new victim to repay earlier victims, pay legal fees, and support personal and lifestyle expenses.

Petitioner pleaded guilty and was sentenced in two separate criminal cases on different dates: CR-19-01276-TUC-JGZ ("*Williams I*") and CR-21-03136-TUC-JGZ ("*Williams III*"). She is serving a 51-month sentence in *Williams I* and a concurrent 136-month sentence in *Williams III*. Petitioner challenges her conviction and sentence in *Williams III*. She asks the Court to set aside that sentence and to "provide [her] with the benefit of the government's Global Plea Offer," which she had previously rejected. (CV Doc. 1-1 at 4.)

### A. Three Criminal Cases

*Williams I (CR-19)*: On May 15, 2019, a federal grand jury indicted Petitioner on 65 counts of wire fraud and eight counts of aggravated identity theft, arising from a scheme to defraud nine elderly annuity clients. (CR-19 Doc. 3.) Acting through her insurance business, Petitioner diverted annuity funds entrusted to her for unauthorized purposes. (*Id*.) On June 22, 2021, Petitioner pleaded guilty to Count 59, charging wire fraud, pursuant to

---

[2] The background facts are drawn from the written plea agreement, the Presentence Investigation Report, the transcript of the sentencing hearing in *Williams III*, and the undisputed factual recitations in the parties' § 2255 briefing. (CR-21 Docs. 30, 51, 58; CV Docs. 20, 25.) Notably, the Government's Response describes the facts underlying Petitioner's criminal convictions in detail. (*See* CV Doc. 20 at 3–9.) Petitioner does not object to or otherwise controvert the Government's recitation of facts.

a written plea agreement. (CR-19 Doc. 91.) On December 17, 2021, the Court sentenced Petitioner to 51 months' imprisonment, followed by 36 months of supervised release, and ordered restitution in the amount of $330,923.40. (CR-19 Docs. 116, 132.)

*Williams II (dismissed)*: On November 23, 2021, Petitioner was indicted on two counts of wire fraud for defrauding another elderly client, W.C., by obtaining $50,000 under the false promise that the funds would be invested in annuities. (CR-21 Doc. 1.) Instead, Petitioner deposited W.C.'s money into her personal bank account and used it for her own benefit. (*Id*.) The Court dismissed the indictment on April 20, 2022, following the victim's death. (CR-21 Doc. 30.)

*Williams III (CR-21)*: On December 8, 2021, a federal grand jury indicted Petitioner on six counts of wire fraud. (CR-21 Doc. 1.) On April 26, 2022, Petitioner pleaded guilty to Counts 1 and 6, admitting that between November 2018 and December 2019, she defrauded her then-79-year-old client, J.L.F., out of more than $1.3 million. (CR-21 Docs. 29, 30, 31.)

According to the plea agreement, beginning in October 2018, after learning she was under investigation for the annuity theft scheme later charged in *Williams I*, Petitioner advised J.L.F. to liquidate eight life insurance policies under the false promise that the proceeds would be reinvested in annuities. (CR-21 Doc. 30 at 10.) Petitioner then induced J.L.F. to issue a check totaling approximately $1.1 million to Petitioner's criminal defense attorneys ("Lawyer A"), falsely representing that Lawyer A worked for her annuity company and that the funds would be used to purchase an annuity for J.L.F. (*Id.*) In reality, Petitioner delivered the checks to Lawyer A, misrepresenting that the funds were a personal loan from her "rich uncle." (*Id*.) Lawyer A deposited the funds in its IOLTA account and, at Petitioner's direction, disbursed J.L.F.'s money to repay victims from the earlier annuity theft scheme in a failed attempt to avoid criminal charges in *Williams I* ($863,935.87), resolve a civil lawsuit related to defrauding another client, and fund Petitioner's defense before the Arizona Department of Insurance. (*Id*.)

After Petitioner was indicted in *Williams I* and released on bond in May 2019, she

continued to exploit J.L.F. to obtain funds for legal expenses and personal support. J.L.F., unaware that Petitioner was under indictment and on pretrial release for criminal fraud, continued to rely on her "investment advice." In June 2019, Petitioner convinced J.L.F. to issue a $120,000 check to Lawyer A—again under the annuity pretense. (*Id.* at 10–11)

Petitioner then devised another scheme to obtain an additional $118,652 from J.L.F. by falsely claiming that he could transfer funds, tax-free, from a trust into a "charitable foundation" she would establish—*The Sacred Juniper Society*—purportedly to support J.L.F.'s disabled adult daughter. (*Id*. at 11.) This representation was entirely fictitious. Rather than placing the funds in trust for J.L.F.'s daughter, Petitioner diverted the money through a bank account created contemporaneously under another fraudulent entity, *In Its Time*. (*Id.*) Through that account, Petitioner and/or her husband made extensive personal expenditures, including large cash withdrawals (many just under $10,000 at a time), vehicle payments, retail purchases, utility expenses, entertainment expenses, and donations to a religious ministry in North Carolina with which Petitioner and her husband were affiliated, their local church, and a local charity. (*Id.*) With the exception of approximately $3,240, all funds deposited into the *In Its Time* account came from J.L.F., and by January 2020 the account carried a negative balance. (*Id.*) Petitioner fraudulently obtained a total of $1,338,652.00 from J.L.F. (*Id.*)

**B.  Sentencing**

On September 30, 2022, approximately nine months after sentencing in *Williams I*, the Court conducted a sentencing hearing in *Williams III*. (CR-21 Docs. 55, 58.) The Court considered the PSR, sentencing memoranda, a letter and in-court statement from Petitioner, letters in support from family and a friend of Petitioner, and heard argument from the lawyers on applicability of acceptance of responsibility and criminal history calculation, and sentencing recommendations. (CR-21 Docs. 46, 49, 50, 51, 58.)

At sentencing, Petitioner challenged the government's position that the 2019 and 2021 offenses were unrelated for criminal-history purposes and argued for a lower sentence under the § 3553(a) factors. The Court overruled her objections, denied the variance

request, and sentenced Petitioner to a total term of 136 months' imprisonment. (CR-21 Docs. 55, 56.) The sentence consisted of 130 months imprisonment on Counts 1 and 6, to run concurrently, plus a consecutive 6-months term under 18 U.S.C. § 3147. (*Id.*) The Court further ordered that the sentence in *Williams III* run concurrently with the sentence previously imposed in *Williams I*, as provided in the parties' plea agreement. (*Id.*)

### C. The Global Plea Offer – February 4, 2021-March 31, 2021

Petitioner's first ineffective assistance claim concerns a global plea offer extended between February 4 and March 31, 2021, before she was indicted in *Williams III*.

In December 2019, plea negotiations in *Williams I* had stalled after investigators uncovered Petitioner's fraud against J.L.F. The discovery of this new conduct prompted Petitioner's retained counsel to withdraw and led to the appointment of new counsel, Saul Huerta. A grand jury investigation into the newly discovered fraud followed. Petitioner and her prior counsel objected to the presentation of certain witnesses and records to the grand jury, resulting in extensive litigation in the district court and the Ninth Circuit. During this period, no progress was made toward resolving either matter. Mr. Huerta was subsequently appointed to represent Petitioner in the grand jury proceedings and vigorously litigated issues related to privileged records.

On January 14, 2021, more than a year after the additional fraud was discovered, the Ninth Circuit resolved the grand jury disputes and authorized the presentation of the contested witnesses and materials to the grand jury. At that time, however, the COVID-19 pandemic had suspended federal grand jury proceedings. *See* General Order 20-12, et seq. Because the grand jury could not convene, the government extended a pre-indictment global plea offer on February 4, 2021, encompassing both *Williams I* and the uncharged conduct involving J.L.F. that would later form the basis of *Williams III*. (CV Doc. 24 at 2–4, Ex. A, Email 1A.)

The global offer capped Petitioner's total sentencing exposure at 66 months' imprisonment and required her to plead guilty to an Information encompassing all counts related to the victims in *Williams I* as well as additional counts involving the new victim,

J.L.F. (*Id.*) In exchange, the government would dismiss eight counts of identity fraud, which, according to the government, would reduce Petitioner's sentencing exposure by two to sixteen years. (*Id.*) The offer was expressly contingent on Petitioner pleading guilty pre-indictment and before the grand jury testimony of the disputed witnesses. (*Id.*)

On February 19, 2021, the government followed up regarding the status of plea negotiations, noting that the grand jury might reconvene within the next month. (*Id.*) Defense counsel responded that he planned to meet with Petitioner in a week or so, after he received his second COVID vaccination. (*Id.*) On March 18, 2021, counsel advised the government that Petitioner was still considering the offer. (*Id.* at 5, Ex. A, Email 1B.) During this period, Petitioner counteroffered that she would plead to only one count in *Williams I*. (*Id.*) Counsel acknowledged that any plea offer would lapse upon indictment but indicated that Petitioner was willing to extend the indictment deadline. (*Id.*) That same day, the government agreed to modify the offer to permit Petitioner to plead guilty to one count related to *Williams I* and one count related to the anticipated *Williams III* charges, while maintaining all other terms of the global agreement. (*Id.*)

On March 31, 2021, defense counsel informed the government that Petitioner had rejected the global offer and wished to proceed separately on the already-indicted *Williams I* case. Counsel wrote:

> I spoke with Ms. Williams and she would like to keep the cases separate. She would like to accept the plea agreement as originally offered on the first offense (which was a plea to count #64, I believe that was the original offer, she indicates that this was apparently the count involving her aunt). She wants to proceed separately on the second potential indictment. Since the first indictment has so many counts and moving parts (unlike the second matter), I think although this may not be ideal, it will cut down on lots of litigation, and the second case is much simpler.

(*Id.* at 6, Ex. A, Email 1C.)

Defense counsel's post-sentence affidavits further clarify Petitioner's reason for rejecting the global plea offer: Throughout the two-month negotiation period, Petitioner maintained her innocence as to the uncharged conduct involving J.L.F. and was unwilling

to plead guilty to any offense related to that scheme. (CR-21 Docs. 14, 19.)

### D. Plea in *Williams I*

Petitioner remained released on bond in *Williams I* and uncharged for the new conduct under grand jury investigation for approximately eight months. While *Williams I* was pending trial, the parties negotiated a written plea agreement limited to that case, which capped Petitioner's sentencing exposure at 51 months' imprisonment. (CV Doc. 24-1 at 2–13, Ex. B, Emails 2A–2H.) Petitioner was actively engaged in these negotiations. She requested revisions to multiple provisions of the agreement, including the specific count to which she would plead guilty and the factual basis, and counsel conveyed those requests to the government. (*Id.*)

On June 22, 2021, Petitioner pleaded guilty in *Williams I* pursuant to the written plea agreement and remained released on bond pending sentencing, which was set for December 17, 2021. (CR-19 Doc. 116.)

### E. Indictment and Plea Agreement in *Williams III*

On December 8, 2021, a federal grand jury returned an indictment in *Williams III*. Nine days later, on December 17, 2021, Petitioner was sentenced and remanded into custody in *Williams I*. Five days after that, on December 23, 2021, Petitioner requested a plea offer in *Williams III*. (CV Doc. 24-2 at 2, Ex. C, Email 3A.) The parties thereafter engaged in plea negotiations, during which Petitioner was actively involved and proposed revisions to multiple provisions of the proposed agreement. (*Id.* at 2-11, Ex. C, Emails 3A-3E.)

On April 26, 2022, Petitioner pleaded guilty pursuant to a written plea agreement. (CR-21 Doc. 29.) Under the terms of the agreement: (1) the sentence in *Williams III* would run concurrent to the sentence in *Williams I*; (2) Petitioner would pay $50,000.00 in restitution to the heirs of the victim in the dismissed *Williams II* case; (3) the parties stipulated to certain U.S.S.G. calculations; (4) Petitioner could argue for a reduction for acceptance of responsibility under USSG 3E1.1(a) & (b); (5) Petitioner could argue for a variance under 18 U.S.C. § 3553(a); (6) Petitioner's sentencing exposure was capped at the

mid-range of the applicable Guidelines range as determined by the Court based on the final offense level and criminal history category; (7) Petitioner would pay restitution to victim J.L.F. in the amount of $1,338,652.00; and (8) Petitioner waived her right to appeal if sentenced within the terms of the agreement.[3] (CR-21 Doc. 30.)

At the change of plea hearing, the magistrate judge confirmed that no one had forced or threatened Petitioner to plead guilty and that she was entering the plea knowingly and voluntarily. (CR-21 Doc. 39 at 7.) The magistrate judge further confirmed that Petitioner understood she could be sentenced to between 70 and 210 months' imprisonment depending on the final offense level and criminal history category. (*Id.* at 8.) Finally, the magistrate judge confirmed that Petitioner understood she was waiving her right to appeal if the sentence imposed fell within the terms of the plea agreement. (*Id.* at 12.)

### F.  2255 Motion

On September 19, 2023, September 21, 2023, and October 4, 2023, Petitioner filed motions for relief under 28 U.S.C. § 2255, asserting claims of ineffective assistance of counsel.[4] (CV Docs. 1, 3, and 4.) In ground one, Petitioner alleges that counsel rendered ineffective assistance during the negotiations of the global plea agreement, which she claims caused her to reject an offer that would have capped her total sentencing exposure at 66 months' imprisonment. (CV Doc. 1 at 3.) In ground two, Petitioner contends that counsel failed to raise five objections to the PSR and sentencing Guidelines calculations, allegedly resulting in a higher sentence than counsel had projected. (*Id.* at 3–4.) In ground three, Petitioner asserts that counsel failed to advise the Court that the plea agreement in *Williams III* provided for concurrent sentences and should have argued for a ten-month reduction based on time Petitioner had already served in *Williams I*. (*Id.* at 4–5.)

On January 30, 2024, the government moved for an order requiring Petitioner's trial counsel to submit an affidavit in response to the Petitioner's ineffective assistance claims.

---

[3] The waiver contained an exception for "an otherwise-preserved claim of ineffective assistance of counsel" or "prosecutorial misconduct." (CR-21 Doc. 30 ¶ 18.)
[4] The motions are identical in substance. Docs. 1 and 1-2 are signed but undated; Docs. 3 and 3-2 are signed and dated September 16, 2023; and Docs. 4 and 4-2 are signed and dated August 2, 2023.

(CV Doc. 8.) The Court granted that motion on February 5, 2024. (CV Doc. 9.) On March 29, 2024, Petitioner's trial counsel filed an affidavit under seal. (*See* CV Doc. 14.) On July 31, 2024, trial counsel filed a second sealed affidavit detailing specific interactions with Petitioner during plea negotiations. (CV Doc. 19-1.) In that affidavit, counsel explained that Petitioner rejected the proposed global plea agreement because she maintained she had not committed the conduct underlying the *Williams III* indictment and could not provide a factual basis admitting guilt, and that she later requested and accepted a plea agreement in the second case after changing her position. (*Id.*)

## II. LEGAL STANDARDS

### A. Section 2255

Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct her sentence if the sentence was imposed in violation of the United States Constitution or laws of the United States, was in excess of the maximum authorized by law, is otherwise subject to collateral attack, or if the sentencing court was without jurisdiction. 28 U.S.C. § 2255(a). To warrant relief, the prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("Brecht's harmless error standard applies to habeas cases under section 2255[.]"). Relief is warranted only upon the showing of "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994), *as amended* (May 6, 1994) (emphasis in original) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d

1155, 1159 (9th Cir. 1996). Therefore, to earn the right to a hearing, the movant must make specific factual allegations which, if true, would entitle him to relief. *Id.* Mere conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

### B. Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). To prevail on a claim of ineffective assistance of counsel, Petitioner must show: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Id.* at 687.

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," and tactical decisions with which a defendant later disagrees do not constitute deficient performance. *Id.* at 689; *People of Territory of Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984).

Prejudice requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the plea context, a defendant must show that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

Because a petitioner must establish both deficient performance and prejudice, a court may resolve an ineffective assistance claim by addressing either prong first and need not analyze both if the petitioner fails to satisfy one. *Strickland*, 466 U.S. at 697.

### III. DISCUSSION

#### A. Counsel's Performance Was Not Deficient and Did Not Prejudice Petitioner

The record conclusively demonstrates that Petitioner is not entitled to relief under

- 10 -

28 U.S.C. § 2255. As set forth below, the contemporaneous record affirmatively refutes Petitioner's factual assertions and shows that counsel's performance fell well within the wide range of reasonable professional assistance. The record also forecloses any showing of prejudice, as Petitioner has not demonstrated a reasonable probability that the outcome of the plea process or sentencing would have been different absent the alleged errors.

### 1. Ground One – Plea Negotiations

Petitioner argues that defense counsel rendered ineffective assistance during plea negotiations by recommending that she reject a global plea offer that would have capped her combined sentencing exposure at 66 months' imprisonment. (CV Docs. 1 at 3, 1-1 at 2.) She alleges that counsel guaranteed a favorable outcome in *Williams III*, believed the conduct underlying that case would not be indicted, and failed to explain the consequences of rejecting the global offer—including potential increases to her advisory Guidelines range, obstruction of justice enhancements based on conduct while on pretrial release, and an increased criminal history category. (CV Doc. 1 at 3.) According to Petitioner, had counsel explained these risks, she would have accepted the government's global plea offer. (*Id.*) The record does not support this assertion.

Petitioner's trial counsel avers that Petitioner rejected the global plea offer because, at the time it was extended, she was unwilling to admit having committed the conduct underlying *Williams III* and therefore could not provide a factual basis for a plea encompassing that conduct. (CV Doc. 19-1 at 2.) The contemporaneous record supports counsel's statement and contradicts Petitioner's current account.

At sentencing in *Williams III*, Petitioner herself addressed her rejection of the global offer, raising it to demonstrate her commitment to repaying her victims.[5] She explained

---

[5] She also wanted to disprove the allegation that she had misrepresented to Pretrial Services that she was making payments to J.L.F. during the pendency of her case. (CR-21 Doc. 58 at 37:21–38:3.) Petitioner told the Court:

> I do want to pay it back because that was my original intention, and I wrote that on my pretrial financial thing. And, Your Honor, I even talked at the beginning of this, [the government] had offered before a zero to 63-month plea deal based on the fact if we included [J.L.F's] case in that original case.

that her "only reason" for declining the global plea offer was her desire to keep the cases separate so that restitution could be paid individually to different victims. (CR-21 Doc. 58 at 37:21–38:3.) Petitioner did not attribute her decision to deficient legal advice, a misunderstanding of her sentencing exposure, or reliance on assurances from counsel. By the time of sentencing, Petitioner would have been aware of these alleged deficiencies.

At sentencing, Petitioner indisputably understood the consequences she now claims were inadequately explained—namely, the obstruction of justice enhancement and increased criminal history category resulting from resolving the cases separately. Those issues were the subject of extensive argument at the sentencing hearing. She also knew that counsel's alleged guaranteed favorable outcome was not going to materialize, as she had plead guilty and admitted to the conduct underlying the *Williams III* charges. Yet, despite that knowledge, Petitioner affirmatively represented that her "only reason" for having rejected the global plea offer was restitution-related—not ignorance of sentencing exposure or reliance on counsel's alleged assurances. (CR-21 Doc. 58 at 37:21–38:3.) In light of this direct explanation that *she* offered to the Court, Petitioner's recent claim that she rejected the global plea offer because she was unaware that proceeding separately exposed her to substantially greater punishment or because she believed counsel had misrepresented her chances of succeeding on the *Williams III* charges is implausible.

Petitioner's explanation at sentencing also aligns with counsel's contemporaneous communication to the government rejecting the global offer and further undermines her claim that counsel advised against accepting the plea. Counsel wrote:

> I spoke with Ms. Williams and she would like to keep the cases separate. She would like to accept the plea agreement as originally offered on the first offense . . . She wants to proceed separately on the second potential indictment. Since the first indictment has so many counts and moving parts (unlike the second matter), *I think although this may not be ideal*, it will cut

And, Your Honor, the only reason that I turned that down is because I felt like it needed to be separate so that I could pay Mr. – like, I wanted this all clean; one, and then [J.L.F.], paying the other one. So I just, I just wanted to clarify those things. It wasn't me trying to be deceitful or it to continue on.

(CR-21 Doc. 58 at 37:18–38:4.)

down on lots of litigation, and the second case is much simpler.

(CV Doc. 24 at 6 (emphasis added).) Counsel's acknowledgment that proceeding separately was "not ideal" is inconsistent with Petitioner's assertion that counsel viewed rejection of the global plea as advantageous or guaranteed a favorable outcome in *Williams III*.

In short, there is no evidence—beyond Petitioner's retrospective assertions—that she would have accepted the global plea offer while it was available had counsel's advice been different. *See United States v. Suris*, 625 F. Supp. 3d 1040, 1049 (C.D. Cal. 2022) (finding no prejudice where there is "no indication besides [petitioner's] own words" that she would have accepted an earlier plea offer). To the contrary, the record establishes that Petitioner rejected the global plea offer for reasons independent of counsel's alleged deficiencies and that the offer lapsed before Petitioner was willing to plead guilty to the conduct underlying *Williams III*. Accordingly, Petitioner has failed to demonstrate a reasonable probability that, but for counsel's alleged ineffective assistance, she would have accepted the global plea offer. *See Lafler*, 566 U.S. at 164.

### 2. Ground Two – Failure to Object at Sentencing

Petitioner asserts that counsel performed ineffectively by failing to object to five items in the PSR. (CR-21 Doc. 51.) None of these omissions establishes either deficient performance or prejudice.

### a. Criminal History Calculations

Petitioner argues that counsel should have objected to the assessment of one criminal history point for her 2005 theft conviction, (CR-21 Doc. 51 ¶ 42), because the conviction was more than ten years old and resulted in a sentence of probation. (CV Doc. 1 at 3.) Any failure to object did not prejudice Petitioner. Based on her 2019, 2013, and 2005 convictions, Petitioner was assessed five criminal history points, placing her in Criminal History Category III. (CR-21 Doc. 58 at 40.) Excluding the single point for the 2005 conviction would not change her criminal history category. *See* U.S.S.G. ch. 5, pt. A. Accordingly, any error in failing to object did not affect the Guidelines calculation.

- 13 -

Petitioner also contends that counsel should have objected to the assessment of one criminal history point for her 2013 criminal impersonation conviction because she received a sentence of one year of probation. (CV Doc. 1 at 3.) She relies on U.S.S.G. § 4A1.2(c)(1), which provides that sentences for certain listed misdemeanor offenses—and offenses similar to them, "by whatever name they are known"—are counted only if the sentence exceeded one year of probation or the prior offense was similar to a listed offense.[6] That provision does not apply here. Criminal impersonation is not among the offenses listed in § 4A1.2(c)(1)(B), nor is it similar in nature or elements to any of the listed offenses. Moreover, Petitioner's probationary sentence was exactly one year—not more than one year—so § 4A1.2(c)(1)(A) is not satisfied. Because neither condition in § 4A1.2(c)(1) is satisfied, the 2013 conviction was properly counted. Counsel therefore had no legal basis to object, and the failure to raise a futile objection does not constitute deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance.").

### b. Substantial Loss of Funds Enhancement

Petitioner next argues that counsel rendered ineffective assistance by failing to join the government's objection to the two-level enhancement applied under Paragraph 32 of the PSR pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(iii), based on the substantial loss of a savings or investment fund. (CV Doc. 1 at 3; CR-21 Doc. 51 ¶ 8.) The government acknowledged that the enhancement was legally correct but objected solely on the ground that it was not included in the parties' plea agreement. (CR-21 Doc. 51 at 25.) The Court overruled that objection, explaining that it was required to calculate the advisory Guidelines range independently of the parties' plea stipulations. (CR-21 Doc. 58 at 39:15–22.)

Petitioner does not dispute that the enhancement was properly applied under the

---

[6] The offenses listed in § 4A1.2(c)(1) include careless or reckless driving, contempt of court, disorderly conduct or disturbing the peace, driving without a license or with a revoked or suspended license, false information to a police officer, gambling, hindering or failure to obey a police officer, insufficient funds check, leaving the scene of an accident, non-support, prostitution, resisting arrest, and trespassing.

Guidelines. Counsel's failure to join a meritless objection therefore does not constitute deficient performance. *See Rupe*, 93 F.3d at 1445. Petitioner also cannot establish prejudice because the Court rejected the objection on the merits and would have overruled any duplicative objection raised by defense counsel for the same reason. *Id.*

### c.  Relatedness of the 2019 and 2021 Conduct

Petitioner also contends that counsel failed to object to, or otherwise challenge, the government's assertion that the 2019 conviction was not related to the conduct charged in the 2021 indictment and therefore should be included in calculating Plaintiff's criminal history points. (CV Doc. 1 at 3–4.) The record flatly contradicts this claim.

At sentencing, counsel expressly opposed the government's position, arguing that the two matters were "so interconnected" that criminal history points should not be assessed for the 2019 conviction. (CR-21 Doc. 58 at 4:1–9.) The Court rejected that argument, finding that the 2021 indictment charged conduct that was "a different scheme with a different purpose," separated in time, and committed in a different manner than the conduct underlying the 2019 conviction. (*Id.* at 40:6–9.)

Because counsel argued against the government's objection, counsel's performance was not deficient. And, the Court's rejection of the argument prejudiced Petitioner, not counsel's performance.

### d.  Acceptance of Responsibility

Petitioner argues that counsel failed "to assert facts that would result in the 3 point reduction for Acceptance of Responsibility since [Petitioner] requested a plea offer and accepted that offer well in advance of the government's need to prepare for trial." (CV Doc. 1 at 4.) This claim fails because Petitioner's conduct was fundamentally inconsistent with acceptance of responsibility. Petitioner therefore cannot establish either deficient performance or prejudice.

Under U.S.S.G. § 3E1.1(a), a defendant may receive a two-level decrease in offense level if she clearly demonstrates acceptance of responsibility for her offense. An additional one-level reduction is available under § 3E1.1(b) only upon motion of the government

stating that the defendant has assisted authorities in the investigation by timely notifying authorities of her intention to enter a plea of guilty. The one-level reduction was not available because the government made no such motion. Consequently, counsel did not perform deficiently by declining to pursue the one-point reduction.

Petitioner's conduct was inconsistent with a two-level reduction. "A defendant who enters a guilty plea is not entitled to an adjustment [for acceptance of responsibility] as a matter of right." U.S.S.G. § 3E1.1 n.3. Simultaneous adjustments for both obstruction of justice and acceptance of responsibility, as requested here, are warranted only in "extraordinary cases." *United States v. Jeter*, 236 F.3d 1032, 1035 (9th Cir. 2001). For a case to be extraordinary, the court must find that the "defendant's obstructive conduct is *not inconsistent* with the defendant's acceptance of responsibility." *United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994) (emphasis in original). A sentencing judge is in a unique position to evaluate a defendant's acceptance and is given great deference in its evaluation. U.S.S.G. § 3E1.1 n.5.

This case was not extraordinary. Petitioner received two adjustments for obstruction of justice, including committing the new offense while on pretrial release in *Williams I*, (*id.* at ¶ 35), and presenting forged documents in an effort to obstruct the investigation, (*id.* at ¶ 36). Petitioner did not admit that the documents were forged for more than two years and only did so after entering a guilty plea in this case. (CR-21 Doc. 30 at 11.) Committing new offenses while on pretrial release and obstructing the investigation is fundamentally inconsistent with acceptance of responsibility. *See Hopper*, 27 F.3d at 383 (explaining that once a district court finds obstructive conduct is inconsistent with acceptance of responsibility, the sincerity of defendant's acceptance is called into question, and "a defendant should never receive an offense level reduction for acceptance of responsibility when there is obstructive conduct contradicting that acceptance of responsibility."); *see also* U.S.S.G. § 3E1.1 n.4.

The parties disputed whether Petitioner qualified for an acceptance of responsibility adjustment and reserved that determination for the Court. (CR-21 Doc. 30, Doc. 51 at 3 ¶

3.) The Presentence Report did not include a reduction for acceptance in its Guidelines calculation. The Court agreed. At sentencing, after hearing from the parties and Petitioner's victims, the Court emphasized Petitioner's continued criminal conduct and danger to the public, stating:

> Even when you were charged with a crime and you were having to answer [for] that, you knew you were being investigated, and you come up with yet another elaborate scheme. I do believe that you present a danger to the public as long as you have any opportunity to make money at other people's expense, and that's shown repeatedly, frankly, since your conviction in 2005. The schemes just get bigger and more people are hurt, some with very severe consequences to them.

(CR-21 Doc. 58 at 42:11–19.) These findings reflect the Court's conclusion that Petitioner's conduct was inconsistent with genuine acceptance of responsibility and show there is no reasonable probability that the Court would have awarded acceptance of responsibility reduction even if counsel had further pursued it.

Petitioner's case falls outside the narrow category of cases in which both adjustments for obstruction and acceptance may apply. Trial counsel acknowledged this assessment in a sworn affidavit, explaining that "[b]ased on the timeline of events, the commentary under U.S.S.G. § 3E1.1 n.4 recommends denial of acceptance of responsibility, except in extraordinary circumstances," and therefore counsel did not pursue the additional reduction. (CV Doc. 14 at 3.)

Counsel reasonably declined to advance an argument that lacked a legal basis. Counsel's decision not to pursue a futile argument does not constitute deficient performance. *See Rupe*, 93 F.3d at 1445.[7] Further, Petitioner was not prejudiced by counsel's failure to advance a deficient argument. Accordingly, Petitioner has shown neither deficient performance nor prejudice.

### 3. Ground Three – Failure to Request Concurrent Sentences

Petitioner contends that counsel rendered ineffective assistance by failing to request a ten-month reduction in her *Williams III* sentence to account for time already served in

---

[7] Counsel nonetheless advocated zealously for a sentence reduction for Petitioner. At sentencing, counsel repeatedly urged the Court to consider a downward variance based on Petitioner's sincere desire to repay her victims.

*Williams I*, despite the parties' stipulation that the sentences would run concurrently. (CV Doc. 1 at 4.) She asserts that counsel should have anticipated that the Bureau of Prisons ("BOP") would not credit the ten months toward *Williams III* and should have sought a corresponding adjustment from the Court. (*Id.*)

The record forecloses this claim. At sentencing, counsel expressly raised the issue of when the BOP would begin crediting Petitioner's sentence in *Williams III*. (CR-21 Doc. 58 at 45:15–20.) The Court acknowledged the concern but declined to adjust the sentence, explaining that the calculation would be left to the BOP under its statutory authority.[8] (*Id.* at 45:21–25.)

Because counsel raised the precise issue Petitioner now identifies, his performance was not deficient. Nor can Petitioner establish prejudice, as the Court considered and rejected the requested relief. Accordingly, Petitioner cannot show a reasonable probability that the outcome would have been different absent counsel's alleged error, as the relief she now seeks was presented to—and declined by—the Court at sentencing.

### B. Motion for Evidentiary Hearing

Petitioner filed two requests for an evidentiary hearing. (CV Docs. 26, 29.) In her first motion, Petitioner seeks a hearing based on trial counsel's sealed affidavit, arguing that counsel's inability to recall specific plea-negotiation discussions creates a factual dispute as to whether counsel explained potential sentencing enhancements and post-indictment exposure, information she claims was necessary to meaningfully evaluate the global plea offer. (CV Doc. 26.) In her second motion, Petitioner again requests an evidentiary hearing pursuant to 28 U.S.C. § 2255(b) but offers no additional factual allegations or substantive argument, asserting only that the record does not conclusively resolve her claims and that the Rules Governing § 2255 Proceedings permit an evidentiary

---

[8] After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence. *See* 18 U.S.C. § 3621(a). The Attorney General must compute credit under § 3585(b). *United States v. Wilson*, 503 U.S. 329, 334 (1992). Pursuant to 18 U.S.C. § 3585(b), the ten months Petitioner served prior to the sentencing in *Williams III*, would be credited against the *Williams I* sentence. Thus, absent adjustment by the district court, Petitioner would not also receive ten months' credit towards *Williams III*.

hearing. (CV Doc. 29.)

A district court is not required to conduct an evidentiary hearing where a petitioner's allegations, "viewed against the record, either fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal.'" *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). Where a petitioner's allegations contradict statements made under oath in court, credibility must be assessed, but an evidentiary hearing is unnecessary if credibility can be "conclusively decided on the basis of documentary testimony and evidence in the record." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988); *see also Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989). In resolving § 2255 motions, courts may expand the record with affidavits and other documentary evidence, rely on their own notes and recollections, and apply common sense. *Shah*, 878 F.2d at 1159; *Watts*, 841 F.2d at 277.

An evidentiary hearing is required only where "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984); *see Baumann v. United States*, 692 F.2d 565, 570–71 (9th Cir. 1982). Conversely, a court has discretion to deny an evidentiary hearing on § 2255 claims "where the files and records conclusively show that the movant is not entitled to relief." *United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998), *as amended* (Sept. 4, 1998) (as amended).

Here, the record forecloses Petitioner's claim that she rejected the global plea offer because of deficient advice from counsel. The contemporaneous record reflects two explanations for Petitioner's decision, neither of which supports her present theory.

Trial counsel states in a sworn affidavit that Petitioner rejected the global plea offer because, at the time it was extended, she was unwilling to admit the conduct underlying the Williams III scheme and therefore could not provide a factual basis for a plea encompassing that conduct. (CV Doc. 19-1 at 2.) Separately, Petitioner herself explained at sentencing that her "only reason" for rejecting the global offer was her desire to keep the

cases separate so that restitution could be paid individually to different victims. (CR-21 Doc. 58 at 37:21–38:3.)

Although these explanations differ, neither suggests that Petitioner rejected the global plea offer because counsel misrepresented her sentencing exposure, guaranteed a favorable outcome, or failed to explain the consequences of proceeding separately. Both accounts describe a decision driven by Petitioner's own objectives, not by reliance on allegedly deficient advice.

Absent from the contemporaneous record is any indication that Petitioner rejected the global plea offer because she misunderstood her sentencing exposure or relied on assurances from counsel that later proved inaccurate. When Petitioner addressed the Court directly at sentencing—after she had pleaded guilty in *Williams III* and after the consequences of proceeding separately had become clear—she did not assert that she had misunderstood her exposure, that counsel failed to explain it, or that she would have accepted the global plea had she known more. Instead, she affirmatively stated that restitution considerations alone motivated her decision.

Thus, while the record reflects differing contemporaneous explanations for Petitioner's rejection of the global plea offer, it provides no support for her current claim that the decision resulted from ineffective assistance of counsel. Petitioner argues that an evidentiary hearing is required because trial counsel stated in his affidavit that he cannot recall the precise substance of every plea-negotiation conversation. (Doc. 26 at 2.) But counsel's inability to recall verbatim conversations does not create a material factual dispute where, as here, the documentary record and Petitioner's own sworn statements affirmatively contradict her current claims.

Accordingly, because the record conclusively shows that Petitioner is entitled to no relief, her requests for an evidentiary hearing will be denied. *See* 28 U.S.C. § 2255(b).

### C. Motion to Appoint Counsel

There is no constitutional right to the appointment of counsel in a civil case. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982). The only

general statutory authority governing the appointment of counsel in civil matters provides that a "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. §1915(e)(1). However, that statute does not authorize courts to require counsel to represent indigent litigants; it only permits requests for voluntary, pro bono representation. *See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 305–05 (1989).

Appointment of counsel under § 1915(e)(1) is required only when "exceptional circumstances" are present. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). In determining whether exceptional circumstances exist, courts consider both (1) the likelihood of success on the merits and (2) the plaintiff's ability to articulate her claims pro se in light of the complexity of the legal issues involved. *Id.* "Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Having considered these factors, the Court finds that exceptional circumstances are not present. Accordingly, Petitioner's Motion to Appoint Counsel is denied.

## IV.    Certificate of Appealability

Before Petitioner can appeal this Court's judgment, a certificate of appealability (COA) must issue. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1); Rule 11(a) of the Rules Governing Section 2255 Cases. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2255 Cases.

A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must indicate which specific issues satisfy this showing. *See* 28 U.S.C. § 2253(c)(3). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right and whether the court's procedural ruling was correct. *Id.*

Applying these standards, the Court finds that Petitioner has not made the required showing. The resolution of Petitioner's claims is not debatable among reasonable jurists. Accordingly, the Court declines to issue a COA.

Accordingly,

**IT IS ORDERED:**

1.       Petitioner's Motions to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docs. 1, 3, 4) are **denied**.

2.       Petitioner's Requests for Evidentiary Hearing (Docs. 26, 29) are **denied**.

3.       Petitioner's Motion to Appoint Counsel (Doc. 30) is **denied**.

4.       In light of the forgoing order, Petitioner's Motion for Status Request Update (Docs. 27, 33), Request for Magistrate Judge (Doc. 28), and Motion for Summary Judgment pursuant to §2255 (Doc. 31) are **denied** as moot.

5.       The Court **denies** the motion for and the issuance of a Certificate of Appealability. (Doc. 32.)

6.       The Clerk of Court must **close** its file in this action.

Dated this 26th day of February, 2026.

_____
Jennifer G. Zipps
Chief United States District Judge